42UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X

MONET DANIELS,

                                                     **VERIFIED COMPLAINT**
                              Plaintiff,      16-cv-3297

                                                     **JURY TRIAL DEMANDED**

        -against-

METROPOLITAN TRANSIT AUTHORITY
NEW YORK CITY TRANSIT AUTHORITY,
& ELVIN VEGA, individually and in his
official capacity

                                                  Defendants.
-------------------------------------------------------------------------------X

     Plaintiff, Monet Daniels, by her attorney, Ken Womble, alleges for her complaint against the defendants as follows:

## PRELIMINARY STATEMENT

1. This is an action brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq. ("Title VII"); New York State Human Rights Law, New York Executive Law §296(1)(a) ("Executive Law"); New York City Human Rights Law, New York City Administrative Code §8-107.1(a) ("City Law"); and all other applicable federal, state and local statutes for sexual harassment. Plaintiff is seeking monetary relief and damages, and other appropriate legal and equitable relief.

## PARTIES

2. At all times relevant hereto, Plaintiff, Monet Daniels, was and is a resident of Kings County, State of New York.

3. Plaintiff is a black female.

4. At all times hereinafter mentioned, Plaintiff was and is still employed by Defendants Metropolitan Transit Authority ("MTA") and New York City Transit Authority ("NYCTA").

5. At all times relevant hereto, Defendants Metropolitan Transit Authority ("MTA") and New York City Transit Authority ("NYCTA"), were and still are public authorities operating under and by virtue of the laws of the State of New York and has a principal place of business at 130 Livingston Street, Brooklyn, New York.

6. At all times relevant hereto, Defendant Elvin Vega was employed by Defendants MTA and NYCTA as a bus operator/trainer.

## JURISDICTION & VENUE

7. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343(4). The Court has supplemental jurisdiction over the claims brought under the Executive Law and the City Law pursuant to 28 U.S.C. § 1367.

8. Venue in the Eastern District of New York is proper pursuant to 28 U.S.C. §1391 inasmuch as acts and transactions constituting violations of the above Acts have occurred in this District.

9. The amount in controversy exceeds $75,000.00 excluding interest and costs.

10. Plaintiff filed a charge of discrimination against defendants with the Equal Employment Opportunity Commission ("EEOC") on or about

11. On or about March 22, 2016, the EEOC issued Plaintiff a notice informing Plaintiff of the right to sue defendants in Federal Court.

12. Plaintiff received this notice on or about March 28, 2016.

13. Plaintiff commenced this action with the filing and service of this complaint,

within 90 days of receipt of the Notice of the Right to Sue.

14. Plaintiff filed a charge of discrimination against defendants with the New York State Division of Human Rights ("DHR") on or about April 6, 2015.

15. After a preliminary investigation, the DHR determined that probable cause existed to believe that Elvin Vega, the MTA and the NYCTA had engaged in unlawful discriminatory practice.

16. On or about January 29, 2016, the DHR dismissed Plaintiff's case on grounds of administrative convenience, at Plaintiff's request, because Plaintiff intended to file the present lawsuit.

## JURY DEMAND

17. Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## FACTS

18. Plaintiff is an employee of defendants MTA and NYCTA, and has been so employed since January 26, 2015.

19. Defendant Vega has been an employee of defendants MTA and NYCTA, and has been so for approximately 4 years.

20. Plaintiff, who had been recently hired and was on probationary status, was on the verge of completing her training to become a bus operator when, on her final training assignment, she was scheduled to be supervised/trained by Defendant Vega.

21. On March 10, 2015, during Plaintiff's final training session under the supervision of Defendant Vega, Defendant Vega's duties were to mentor and instruct "the student" in the proper performance of the bus operator duties and familiarize "the student" with the particular

3

route.

22. Defendant Vega had trained over 25 students before he was assigned to train Plaintiff. Defendant Vega received increased compensation for training student drivers.

23. As was recognized by DHR when it made a finding of probable cause in Plaintiff's case, "the position of trainer is one that holds a special sense of power over their trainee."

24. Plaintiff trained under Defendant Vega initially on the B38 bus.

25. After the meal break (Plaintiff and Defendant Vega were not together during this break), Plaintiff and Defendant Vega were assigned to the B20 bus.

26. Plaintiff noticed that Defendant Vega was acting quite differently than he had before the meal break.

27. Defendant Vega drove the bus to the end of the line, where he parked the bus behind another B20 bus. The bus was empty save for Plaintiff and Defendant Vega.

28. Defendant Vega checked the bus and then began using his phone.

29. Defendant Vega then engaged Plaintiff in conversation.

30. Once the other B20 bus pulled out, leaving Defendant Vega's B20 bus alone, Defendant Vega then changed the tenor and topic of his conversation, asking Plaintiff repeatedly about her weight and size. Plaintiff answered Defendant Vega, but Defendant Vega said that he did not believe Plaintiff. Defendant Vega then told Plaintiff to hold her arms out straight from her side. Uncertain of what was occurring, Plaintiff complied with her trainer. After Plaintiff held her arms up, Defendant Vega approached Plaintiff, grabbed her under her armpits (touching the sides of Plaintiff's breasts) and lifted Plaintiff into the air. Plaintiff, quite unsettled by this unwanted invasion by her trainer, quickly asked Defendant Vega to put her down. Defendant

Vega did put Plaintiff down.

31. Defendant Vega then began talking about Plaintiff's height and weight again.

32. Plaintiff retreated to one of the vertical bus poles, put an arm around it and faced away from Defendant Vega.

33. Defendant Vega walked over to Plaintiff again, stood with his back to hers and commented that, since he was so much bigger than her, that no one could see her if they tried.

34. Plaintiff was nervous but tried to remain somewhat friendly with Defendant Vega because they were alone on the bus and she did not want him to harm her.

35. As Plaintiff was still facing away from Defendant Vega, he approached Plaintiff from behind, grabbed her by her legs, lifted her up and sat Plaintiff's buttocks on his shoulder. Plaintiff grabbed onto the ceiling handrails to keep from falling and told Defendant Vega to put her down. Defendant Vega lowered down halfway but then stood back up with Plaintiff still on his shoulder. Defendant Vega was laughing throughout. Through Plaintiff's continued protests, Defendant Vega again talked about how he goes to the gym and works out, and he also asked Plaintiff if her husband picks her up like this. Plaintiff told Defendant Vega that she was scared of heights and asked him again to put her down. Defendant Vega then lowered Plaintiff from his shoulders and slid her body down the front of his until Plaintiff was back on the floor. Plaintiff felt Defendant Vega's penis against rubbing against her body while he was lowering her down.

36. Each of these incidents of physical sexual harassment was captured by the bus's video surveillance system.

37. Defendant Vega, in his subsequent statements to the Office of Equal Employment Opportunity of the MTA as well as his statements during arbitration, told a very different story. Defendant Vega claimed that after they arrived at the end of the line, he asked Plaintiff if she

5

wanted to drive the bus. Defendant Vega claimed that when he asked Plaintiff if she wanted to drive the bus, Plaintiff told him that she was "nervous" to drive the bus. Defendant Vega also claimed that when he told Plaintiff that it would be fine, she responded by saying, "that's easy for you to say, I am little and this bus is big." Plaintiff said no such thing, nor would she have had reason to since she had already completed 11 previous training sessions like this one, and had performed well each time.

38. Defendant Vega told Plaintiff that it was her time to drive the bus. Although Plaintiff was quite shaken from being repeatedly physically harassed, she complied and began driving the bus.

39. While Plaintiff was driving, Defendant Vega repeatedly stood with his body against her.

40. Although the MTA rules order that the driver partition is to remain closed when the bus is being operated, Defendant Vega ignored this rule so that he could stand against Plaintiff's body. None of the other instructors that trained Plaintiff stood next to her with the partition open.

41. While Plaintiff was driving the bus, Defendant Vega repeatedly reached across Plaintiff to adjust the controls to the left of her. This "assistance" was unrequested and unnecessary, but it did allow Defendant Vega the opportunity to continually brush against Plaintiff's body, which he did.

42. At the last stop before their final destination (the bus depot), Plaintiff exited the driver's seat and sat in one of the passenger seats, expecting that Defendant Vega, her trainer, would pull the bus into the depot. Plaintiff was shaken and wanted no further interaction with Defendant Vega. Defendant Vega walked over to Plaintiff and asked her if she was going to

6

drive the bus into the depot. Plaintiff responded that she would not. Defendant Vega then harshly told Plaintiff that if she did not get back in the driver's seat, he would pick her up and put her there. Defendant Vega then bent down and put his arms under Plaintiffs thighs to lift her up and carry her to the driver's seat. Plaintiff immediately protested and told Defendant Vega that she would drive the bus. Plaintiff then got back into the driver's seat and pulled the bus into the depot.

43. All of Defendant Vega's improper, harassing, and abusive conduct was captured clearly by the surveillance system on the bus. This video is in the possession of Defendants MTA and NYCTA.

44. Plaintiff then exited the bus and turned in her "trip sheet" to the depot supervisor. As she was going to leave, Defendant Vega asked her where Plaintiff was parked so that he could walk her to her car. When Defendant Vega walked into the depot to get his belongings, Plaintiff quickly went to her car and drove home. Plaintiff did not want Defendant Vega following her to her car because she was unsure of what further harassment he would force upon her.

45. When Plaintiff arrived home, she told her husband what had happened.

46. Plaintiff had great difficulty sleeping that night.

47. At Plaintiff's graduation the following day, she conferred with fellow student Colin Rodney regarding what Defendant Vega had done to her. Colin Rodney contacted Plaintiff's union representative who advised Plaintiff to write a formal complaint.

48. Defendant Vega was also required to write a statement about the incidents. Defendant Vega, in his own written statement to Defendant MTA wrote, "I know what I did was a little inappropriate, and it was a mistake on my part."

49. Following arbitration, Defendant Vega was allowed to return to work with only a time served suspension.

50. Once Defendant Vega returned to work, it was Plaintiff, not Defendant Vega, who was transferred to a different bus route. However, Defendant MTA and NYCTA did not place the Plaintiff on a bus route that would ensure that Plaintiff had no contact with Defendant Vega.

51. Defendants MTA and NYCTA should have taken more appropriate action to protect Plaintiff from Defendant Vega. Instead, they have assigned Plaintiff and Defendant Vega to bus lines that do come into contact with each other.

52. Plaintiff continues to relive the incident, suffering emotional distress knowing that at any point during her working day she could cross paths with Defendant Vega.

53. On February 19, 2016, while both were working, Plaintiff and Defendant Vega crossed paths. Defendant Vega, who was driving the B20 bus, looked at Plaintiff, winked at her, smiled and then drove off. This interaction caused Plaintiff great distress.

54. Since the March 10, 2015, incident in which Defendant Vega sexually harassed Plaintiff, Plaintiff has had to endure a hostile work environment, where numerous employees of the male-dominated MTA and NYCTA have treated Plaintiff as the abuser and Defendant Vega as the victim.

### FIRST CAUSE OF ACTION
*Gender Discrimination, Sexual Harassment,*
*Hostile Work Environment Under Title VII*

55. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "54" as if fully set forth herein.

56. By the acts and practices described above, defendants have discriminated against

8

Plaintiff, a black female, in the terms and conditions of her employment on the basis of her gender, allowed Plaintiff to be sexually harassed in the workplace and allowed a hostile work environment to persist despite Plaintiff's repeated complaints, all in violation of Title VII.

57. Specifically, Defendants were made aware of the improper conduct by Defendant Vega, in that Plaintiff complained directly to Defendants MTA and NYCTA. Defendants MTA and NYCTA were aware of Defendant Vega's actions and yet they failed to take appropriate action to ensure that Plaintiff did not have to face a hostile work environment as a result of her coming forward against Defendant Vega.

58. Plaintiff has suffered, is suffering and will continue to suffer irreparable injury and damages for mental anguish and humiliation as a result of Defendants' discriminatory acts.

## SECOND CAUSE OF ACTION
*Sexual Harassment and Hostile Work Environment*
*In Violation of the New York State Human Rights Law*

59. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "58" as if fully set forth herein.

60. By the acts and practices and their course of conduct described above, defendants have violated the New York State Human Rights Law, Executive Law §§ 290 to 297 by sexually harassing and allowing the sexual harassment of Plaintiff.

61. By the acts and practices and their course of conduct described above, Defendants have violated the New York State Human Rights Law, Executive Law §§ 290 to 297 by fostering, creating, aiding and abetting in hostile work environment.

62. Specifically, Defendants were made aware of the improper conduct by Defendant Vega, in that Plaintiff complained directly to Defendants MTA and NYCTA. Defendants MTA and NYCTA were aware of Defendant Vega's actions and yet they failed to take appropriate

9

action to ensure that Plaintiff did not have to face a hostile work environment as a result of her coming forward against Defendant Vega.

63. Plaintiff is now suffering and will continue to suffer irreparable injury and damages for mental anguish and humiliation as a result of Defendants' unlawful acts.

### THIRD CAUSE OF ACTION
*Sexual Harassment and Hostile Work Environment
In Violation of the New York City Human Rights Law*

64. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "63" as if fully set forth herein.

65. By the acts and practices and their course of conduct described above, Defendants have violated the New York City Human Rights Law, Administrative Code of New York § 8-107 et seq., by sexually harassing and allowing, aiding and abetting the sexual harassment of plaintiff.

66. By the acts and practices and the course of conduct described above, Defendants have violated the New York City Human Rights Law, Administrative Code of New York § 8-107 et seq., by fostering, creating, aiding and abetting a hostile work environment.

67. Specifically, Defendant Vega was supervising/training Plaintiff at the time that he sexually harassed Plaintiff. Further, Defendants described the working relationship between Defendant Vega and Plaintiff as one of "teacher" and "student" respectively.

68. Plaintiff is now suffering and will continue to suffer irreparable injury and damages for mental anguish and humiliation as a result of Defendants' unlawful acts.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter an award:

a) Directing Defendants to pay Plaintiff damages to compensate Plaintiff for the

      emotional distress and reputational damage Defendants' unlawful conduct has caused Plaintiff, in an amount that exceeds the jurisdictional minimum of this Court;

b) Awarding Plaintiff such interest as is allowed by law;

c) Awarding Plaintiff her reasonable attorney's fees and costs; and

d) Granting such other and further relief as the Court deems necessary and proper.

DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiff demands trial by jury in this action of all issues so triable.

Dated: New York, New York
      June 210, 2016                                  By:     Ken Womble

                                                                     /s/ Ken Womble

                                                                Ken Womble
                                                                Attorney for Plaintiff
                                                                Moore Zeman Womble, LLP
                                                                66 Willoughby St.
                                                                Brooklyn, New York 11201
                                                                (T) (718) 514-9100
                                                                (F) (917) 210-3700
                                                                womble@brooklynattorney.nyc